`                          UNITED STATES DISTRICT COURT
                          EASTERN DISTRICT OF KENTUCKY
                          CENTRAL DIVISION at LEXINGTON


CIVIL ACTION NO. 09-208-GWU


CHERYLYN MORRIS,                                              PLAINTIFF,


VS.                        **MEMORANDUM OPINION**


MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                             DEFENDANT.


## INTRODUCTION

Cherylyn Morris brought this action to obtain judicial review of an unfavorable administrative decision on her application for Disability Insurance Benefits (DIB). The case is before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation process in assessing whether a claimant is disabled.

   1.     Is the claimant currently engaged in substantial gainful activity? If so, the claimant is not disabled and the claim is denied.

   2.     If the claimant is not currently engaged in substantial gainful activity, does he have any "severe" impairment or combination of impairments--i.e., any impairments significantly limiting his physical or mental ability to do basic work activities?  If not, a finding of non-disability is made and the claim is denied.

   3.     The third step requires the Commissioner to determine whether the claimant's severe impairment(s) or combination of impairments meets or equals in severity an impairment listed

09-208  Cherylyn Morris

in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of Impairments).  If so, disability is conclusively presumed and benefits are awarded.

4.      At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work.  If so, the claimant is not disabled and the claim is denied.  If the plaintiff carries this burden, a prima facie case of disability is established.

5.      If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir.

1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir.

1997).

Review of the Commissioner's decision is limited in scope to determining

whether the findings of fact made are supported by substantial evidence.  Jones v.

Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir.

1991).  This "substantial evidence" is "such evidence as a reasonable mind shall

accept as adequate to support a conclusion;" it is based on the record as a whole

and must take into account whatever in the record fairly detracts from its weight.

Garner, 745 F.2d at 387.

2

09-208  Cherylyn Morris

One of the issues with the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary.  Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit.  Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain.  Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms.  20 C.F.R. § 404.1529 (1991).  However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine:  (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

3

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir.
1986).

Another issue concerns the effect of proof that an impairment may be
remedied by treatment.  The Sixth Circuit has held that such an impairment will not
serve as a basis for the ultimate finding of disability.  Harris v. Secretary of Health
and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984).  However, the same
result does not follow if the record is devoid of any evidence that the plaintiff would
have regained his residual capacity for work if he had followed his doctor's
instructions to do something or if the instructions were merely recommendations.
Id.  Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106,
1113 (6th Cir. 1986).

In reviewing the record, the court must work with the medical evidence before
it, despite the plaintiff's claims that he was unable to afford extensive medical work-
ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th
Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor
to be considered against the plaintiff, Hale v. Secretary of Health and Human
Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way
to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d
241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

4

09-208  Cherylyn Morris

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case.  Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had.  E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category

09-208  Cherylyn Morris

if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance

6

on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The Administrative Law Judge (ALJ) concluded that Morris, a former quality inspector and assembler, suffered from impairments related to an L5-S1 disc bulge, disc disease at multiple levels of the cervical spine, and headaches.  (Tr. 22, 26). Despite the plaintiff's impairments, the ALJ determined that she retained the residual functional capacity to perform medium level work, restricted from a full range by an inability to work with her hands overhead, an inability to frequently turn her head, and the need for a sit/stand option.  (Tr. 24-25).  Since the claimant would be able to return to her past relevant work she could not be considered totally disabled.  (Tr. 26-27).

After review of the evidence presented, the undersigned concludes that the administrative decision is not supported by substantial evidence.  However, the current record also does not mandate an immediate award of DIB.  Therefore, the court must grant the plaintiff's summary judgment motion, in so far as it seeks a remand of the action for further consideration, and deny that of the defendant.

The hypothetical question presented to Vocational Expert Carroll Tarvin included an exertional limitation to medium level work.  (Tr. 338).  In response,

Tarvin testified that such a person could still perform all of Morris's past relevant work.  (Id.).  However, as previously noted, the ALJ included a number of non-exertional restrictions such as the need for a sit/stand option, an inability to work with her hands over her head and an inability to frequently turn her head.  (Tr. 24-25).  Since the question did not include these restrictions, the vocational expert's testimony does not support a finding that the past relevant work could still be performed.

The ALJ could not rely upon the Medical-Vocational Guidelines since he found the existence of non-exertional restrictions.  Therefore, one must look to Morris's own statements concerning her job requirements to determine whether the past relevant work would be precluded by her impairments.

On the Work History Report, Morris identified a number of job requirements. (Tr. 116-120, 122).  All of her past jobs involved extensive standing and walking, with the jobs of warehouse supervisor and quality inspector requiring up to eight hours a day of standing (Tr. 117-118), the job of factory assembler requiring up to 11 hours of standing (Tr. 119), the job of store assembler requiring four to six hours of standing or walking (Tr. 120), and the job of warehouse inspector requiring nine hours of standing and walking (Tr. 122).  The jobs of quality inspector, factory assembler, and store assembler did not permit sitting at all (Tr. 118-120) while the jobs of warehouse supervisor (Tr. 117) and factory inspector (Tr. 122) only allowed

8

for two hours day of sitting.  Obviously, these jobs would not accommodate a sit/stand option as found by the ALJ.  Therefore, based on the current record, the plaintiff has proven that her impairments would preclude a return to her past relevant work.  Since the record is devoid of evidence that other work accommodating the non-exertional restrictions found by the ALJ could be performed, a remand of the action for further consideration is required.

The ALJ also erred in evaluating the medical evidence of record.  Dr. Tamea Evans, a treating physician at the White House Clinic, identified a number of very severe physical restrictions in May of 2008 including an inability to lift more than ten pounds, an inability to push, pull, sit or stand in one position for long periods of time, and the need to lie down periodically through the day.  (Tr. 279).  When these restrictions were presented to the vocational expert, she could name no jobs which would remain available.  (Tr. 339).  The ALJ rejected this opinion because he did not believe that it was well-supported by objective medical data.  (Tr. 23).  However, the court notes that Dr. Evans cited in support of her opinion MRI scans of the plaintiff's lumbar and cervical spines which revealed the existence of desiccated discs and nerve/spinal compression.  (Tr. 279, 297-298).  Thus, at least some objective medical data supports the opinion of Dr. Evans.  The administrative regulations at 20 C.F.R. § 404.1527(d)(2) require an ALJ to state the reasons for rejecting the opinion of a treating source and the agency's failure to follow its own

procedural regulations can constitute reversible error.  Wilson v. Commissioner of Social Security, 378 F.3d 541, 546 (6th Cir. 2004).  Implicit in this requirement is that the cited reasons need to be adequate.  Therefore, upon remand, the ALJ needs to more thoroughly address Dr. Evans's findings.

Morris also argues that the ALJ erred in rejecting the opinions of Dr. Harry Lockstadt and Dr. Sara Salles.  Dr. Lockstadt was a treating physician at Bluegrass Orthopedics who opined that the plaintiff would be restricted to a limited range of sedentary level work.  (Tr. 159).  The ALJ cited a number of reasons why Dr. Lockstadt's opinion was not entitled to controlling weight, including a negative neurological evaluation and the doctor's notation concerning the fact that the patient's symptoms were on the wrong side.[1]  (Tr. 51).  These reasons were sufficient for the ALJ to reject the opinion.  Dr. Salles also identified a number of very severe physical limitations, with the claimant restricted to less than a full range of sedentary level work.  (Tr. 217-220).  The court notes that Dr. Salles was a one-time examiner whose opinion was not entitled to special weight.  Her opinion would be offset by those of a number of other examiners including Dr. Kenneth Graulich (Tr. 239-244), Dr. Timothy Kris (Tr. 252-255) and Dr. Stephen Nutter (Tr. 269-278).  Therefore, the court finds no error with the ALJ's treatment of these reports.

---

[1]The ALJ made this finding in a March, 2007 denial decision which was later overturned by the Appeals Council.  However, the ALJ did incorporate by reference his discussion of the medical evidence from this opinion.  (Tr. 23).

09-208  Cherylyn Morris

The undersigned concludes that the administrative decision must be reversed and the action remanded to the Commissioner for further consideration. Therefore, the court must grant the plaintiff's summary judgment motion to this limited extent and deny that of the defendant.  A separate judgment and order will be entered simultaneously consistent with this opinion.

This the 26th day of February, 2010.

Signed By:

_G. Wix Unthank_

**United States Senior Judge**

11